UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MICHAEL BECHTOLD, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>SPRINT NEXTEL CORPORATION, d/b/a SPRINT NEXTEL, NEXTEL or SPRINT and f/k/a/ SPRINT CORPORATION, SPRINT SPECTRUM L.P. a/k/a/ SPRINT PCS, SPRINT SOLUTIONS, INC., SPRINT/UNITED MANAGEMENT COMPANY, NEXTEL RETAIL STORES, NEXTEL OPERATIONS, INC., NEXTEL PARTNERS OPERATING CORP., and NEXTEL WEST CORP.,<br><br>Defendants. | Case No. 08-cv-23-JPG |

## MEMORANDUM AND ORDER

This matter comes before the Court on Defendants's Second Motion to Dismiss (Doc. 72) under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has responded (Doc. 74) and Defendants have replied (Doc. 80). For the following reasons, the Court DENIES the Motion.

### BACKGROUND

**I.      Procedural Posture**

Plaintiff Paula Appleby (Appleby) originally filed a purported class action complaint against Defendants Sprint Nextel Corporation, d/b/a Sprint Nextel, Nextel or Sprint and f/k/a/ Sprint Corporation, Sprint Spectrum L.P. a/k/a/ Sprint PCS, Sprint Solutions, Inc., Sprint/United Management Company, Nextel Retail Stores, Nextel Operations, Inc., Nextel Partners Operating

Corp., and Nextel West Corp., (hereinafter collectively "Sprint") on January 11, 2008. Sprint filed a motion to dismiss the complaint, which the Court granted. The Court found that Appleby's complaint contained numerous allegations of Defendants's wrongful conduct toward other consumers, but did not sufficiently allege that Appleby herself was injured by such wrongful conduct. The Court found that the lack of information contained in the allegations particular to Appleby meant that Appleby could not establish that she had standing to bring suit, because she could not point to an injury to herself fairly attributable to Sprint's actions. Neither could Appleby meet the requirements of the Federal Rules of Civil Procedure, because she had not given Defendants fair notice of the claims against them, nor alleged sufficient facts to show that she had a plausible right to relief. The Court granted Appleby leave to amend her complaint to address these deficiencies. Later the Court granted Appleby leave to withdraw from the suit and substitute a new named plaintiff, Michael Bechtold (Bechtold). Bechtold filed an amended complaint, and it is to the Amended Complaint that Sprint's Motion to Dismiss is addressed.

**II.    Facts**

For purposes of a motion to dismiss, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those facts in favor of the plaintiff. *Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007) (per curiam ) (quoting *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 833 (7th Cir.2007). The Court, accepting all of Bechtold's allegations as true and drawing all reasonable inferences it his favor, finds the following facts for purposes of this motion.

In December 2005, Bechtold purchased two cellular telephones and cellular telephone

service from Sprint via a Sprint agent working at the Radioshack store in the Alton Square Mall. Sprint's agent did not disclose to Bechtold that he was agreeing to a two-year service contract and that he would be charged an early termination fee if he chose to cancel his service contract before the two years had expired. Had Bechtold known that the service contract was for a two-year period and could not be cancelled prior to the expiration of that time without paying a fee, he would not have chosen Sprint as his cellular telephone service provider. The service contract was not memorialized in a writing signed by Bechtold. Sprint assigned Bechtold account number 835786053 for his service account.

In March 2006, Bechtold called Sprint's toll free customer service number in order to cancel his cellular telephone service. Sprint's telephone representative informed Bechtold that his service contract was for a two-year period which began in December 2005. Therefore, Sprint told Bechtold, if he chose to discontinue Sprint's cellular telephone service, he would be assessed an early termination fee. Bechtold did not cancel his Sprint Cellular telephone service at that time because of Sprint's representations.

In December 2006, one of the cellular telephones on Bechtold's account broke. He went to the Sprint store in Fairview Heights, Illinois to replace it. A Sprint agent assisted him in replacing his inoperable phone. At no time did Sprint's agent disclose to Bechtold that by replacing his broken phone, he would be agreeing to a new two-year cellular telephone service contract. This new service contract was not memorialized in a writing signed by Bechtold.

Prior to December 2007, Bechtold began noticing that his monthly cellular telephone bill included unauthorized charges and fees, making his total bill much more than he had anticipated it being when he first opened his Sprint account. Bechtold contacted Sprint by calling the toll

3

free customer service number. He complained about the unauthorized fees, but Sprint's telephone representative refused to remove or reduce the charges.

In December 2007, at the end of his initial two-year cellular telephone service contract with Sprint, Bechtold contacted Sprint via the toll free customer service number in order to cancel his cellular telephone service. Sprint's telephone representative told Bechtold that by replacing his inoperative phone in December 2006, Bechtold had agreed to a new two-year cellular telephone service contract with Sprint. Once again, Sprint told Bechtold that if he chose to discontinue Sprint's cellular telephone service, he would be assessed an early termination fee. Bechtold did not cancel his Sprint cellular telephone service at that time because of Sprint's representations.

Sprint either falsely told Bechtold he was committed to the service contracts and falsely told him that he could be assessed an early termination fee in order to get Bechtold to continue using and paying for Sprint's services when he was under no obligation to do so, or Sprint fraudulently induced Bechtold into agreeing to the service contracts by withholding material information from him.

**ANALYSIS**

Sprint filed the instant motion to dismiss asserting that Bechtold has failed to establish that he has standing to bring his complaint, that Bechtold's complaint is deficient under Rules 8 and 9 of the Federal Rules of Civil Procedure, and that, as a matter of law, no relief can be granted for Bechtold's declaratory judgment claim.

**I.      Rule 12(b)(1) Lack of Subject Matter Jurisdiction**

As an initial matter, Sprint contends that Bechtold does not have standing to bring this

action.  A defendant can challenge a court's subject matter jurisdiction under Rule 12(b)(1) in two ways.  He may make a facial challenge to the sufficiency of the complaint's jurisdictional allegations as a matter of law, in which case, as with a Rule 12(b)(6) motion, all well-pleaded factual allegations are accepted as true and construed in the light most favorable to the plaintiff. *Salah v. United States,* 11 Fed.Appx. 603, 604-05 (7th Cir.2001); *Garcia v. Copenhaver, Bell & Assocs.*, 104 F.3d 1256, 1261 (11th Cir. 1997); *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994); 2 James Wm. Moore *et al., Moore's Federal Practice*, § 12.30[4], at 12-38 to 12-39 (3d ed.).

A defendant may also challenge the facts on which the complaint relies to allege jurisdiction, in which case the plaintiff is not entitled to have his allegations taken as true or to have any inferences drawn in his favor.  *Sapperstein v. Hager*, 188 F.3d 852, 855-56 (7th Cir. 1999);  2 James Wm. Moore *et al., Moore's Federal Practice*, § 12.30[4], at 12-38 to 12-40 (3d ed. 2000).  To resolve a challenge to the facts, a court may receive and weigh evidence outside the allegations in the complaint to determine if it has subject matter jurisdiction over the case. *Sapperstein*, 188 F.3d at 855-56.  In any case, the plaintiff has the burden of proving that subject matter jurisdiction exists.  *Kontos v. United States Dep't of Labor*, 826 F.2d 573, 576 (7th Cir. 1987).

In the case at bar, Sprint challenges the sufficiency of the complaint's jurisdictional allegations as a matter of law.  Therefore, the Court accepts as true all well-pleaded factual allegations and construes them in the light most favorable to the plaintiff.

### A. Standing Requirement

A plaintiff has standing only if he can show that he has suffered an injury in fact that is

fairly traceable to the challenged action of the defendant and which will likely, not merely speculatively, be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). "[This] tends to assure that the legal questions presented to the court will be resolved, not in the rarified atmosphere of a debating society, but in a concrete factual context conducive to a realistic appreciation of the consequences of judicial action." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982).

Sprint contends that Bechtold does not have standing to bring this suit, because by bringing his allegations against "Defendants" as a group (rather than naming each individual Defendant in each allegation) he does not adequately allege that his injuries are fairly traceable to the actions of the individual defendants. Sprint argues, "There are . . . no allegations to support the baseless contention that Plaintiff had a relationship with each and every Defendant." That is to say, Sprint does not believe that Bechtold will be able to produce evidence to prove that each and every defendant caused the injuries that Bechtold alleges he suffered. This is fundamentally not a standing issue.

Sprint is not arguing that Bechtold did not allege an injury. Nor is Sprint arguing that Bechtold has alleged facts attributing that injury to some third party. Finally, Sprint does not argue that a favorable decision would fail to redress Bechtold's injury. Instead Defendants are merely arguing that they (or some of them) did not do what Bechtold claims they did. At this stage in the proceedings, however, Bechtold is not required to prove his claims, only to competently plead them. Bechtold has done this. Whether Bechtold will be able to prove, for example, that the Sprint representatives he dealt with were agents of all, some, one, or none of

6

the Defendants is a matter for another day. Furthermore, even if Bechtold is unable to prove his claims, such an eventuality would not mean that he lacked standing to bring them. Nor would such an eventuality strip the Court of its jurisdiction over this action. For purposes of this motion, Bechtold has stated facts which, if true, satisfy the requirements of Article III that he suffered an actual injury fairly attributable to the actions of the Defendants which will likely be redressed by a favorable decision.

## II. Bechtold's Complaint Meets Pleading Requirements

The federal system of notice pleading requires only that the plaintiff provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). Therefore, the complaint need not allege detailed facts. *Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir.2007). However, in order to provide fair notice of the grounds for his claim, the plaintiff must allege sufficient facts "to raise a right to relief above the speculative level." *Id*. (quoting *Twombly*, 127 S.Ct. at 1965 (2007) (internal quotations omitted)). The complaint must offer "more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 127 S.Ct. at 1965. The plaintiff's pleading obligation is to avoid factual allegations "so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8." *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir.2007). However, "when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder." *Twombly*, 127 S.Ct. at 1969 n 8.

A complaint alleging fraud must also meet the standards of Rule 9 of the Federal Rules of

Civil Procedure. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. Pro. 9(b). The "circumstances constituting fraud" must include the "who, what, when, where and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

A.   **Counts I through V**

Counts I through V of the Amended Complaint are all premised on Bechtold's allegations that Sprint, through its agents or representatives, made misstatements (either intentionally or negligently) that caused him to enter into a contract with Sprint or that caused him to believe that he owed Sprint contractual obligations when he did not. As such, Bechtold's Complaint must meet the pleading standards of Rule 9(b) by pleading the "who, what, when, where and how" of the alleged scheme. *DiLeo,* 901 F.2d at 627. However, "[s]pecificity requirements may be relaxed. . . when the details are within the defendant's exclusive knowledge." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).[1]

Defendants assert that Bechtold's complaint fails to meet the Rule's requirements because his allegations are aimed at "defendants" as a group, rather than identifying which defendant said or did what. Defendants argue that Bechtold does not identify the specific person who told him he was committed to a two-year contract or who told him he would be charged an early termination fee if he canceled his service contract. Bechtold points out that his complaint provides the months and years in which he called Sprint's toll free customer service line, the

---

[1] The Court rejects Defendants's unsupported assertion that *Twombly* necessitates a rejection of the line of cases holding that Rule 9(b)'s specificity requirements may be relaxed when the specific facts are within the defendant's exclusive knowledge.

8

month and year he purchased his replacement phone and the store from which he purchased it, and his Sprint account number. He argues that these are sufficiently particular facts to enable Defendants to mount their defense. He also maintains that the names of the representatives with whom he spoke and the specific corporate entity or entities for which they work are facts uniquely within the knowledge of Defendants. The Court agrees. By supplying his Sprint service account number and the approximate dates and ways in which he contacted Defendants, Bechtold has given Defendants ample notice of the claims against them and the ability to investigate the claims and prepare a responsive pleading. Requiring Bechtold to ascertan, prior to conducting discovery, the names and corporate affiliations of telephone representatives with whom he had only a brief exchange or a store clerk with whom he conducted only a single sale would be unduly onerous. Furthermore, these facts can be easily ascertained by Defendants, who are all corporate subsidiaries of Sprint-Nextel Corporation. Therefore, the Court finds that Bechtold may be excused from pleading those details in his complaint. *See, Jepson*, 34 F.3d at 1329 (noting that while plaintiffs are not normally entitled to treat multiple corporate defendants as one entity, when the corporate defendants are related and can sort out their involvement in the alleged fraud without significant difficulty, courts may excuse plaintiffs from some specificity otherwise required by Rule 9(b)). Accordingly, the Court finds that the Amended Complaint complies with Rules 8 and 9(b) of the Federal Rules of Civil Procedure. The Court, therefore, denies Defendants's motion to dismiss on those grounds.

### III. Declaratory Judgment Count

Count VI of the Amended Complaint seeks a declaratory judgment that Sprint's service contracts violate the Illinois Statute of Frauds because they purport to be contracts for services

incapable of being performed within one year and they are not memorialized in a writing signed by Bechtold. Sprint contends that this Count is improper because the Statute of Frauds is an affirmative defense to an action to enforce a contract, it does not provide an independent cause of action. However, the Seventh Circuit has recognized that a statute of frauds defense can form the basis for a declaratory judgment action, so long as the controversy is ripe for adjudication. *Nucor Corp. v. Aceros y Maquilas de Occidente*, 28 F.3d 572, 585 (7th Cir. 1994). Sprint contends that the Court does not have jurisdiction to hear this claim because it does not present an actual case or controversy, as Sprint has not threatened Bechtold with litigation, nor threatened his credit rating.

The Declaratory Judgment Act (the Act), 28 U.S.C. § 2201, states, in pertinent part: "In a case of actual controversy within its jurisdiction. . . , any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." *Id*.

However, a court may not use its discretion to issue a declaration under the Act where there is no "actual controversy" between the parties. *Id.* The Act's language "tracks the 'cases' or 'controversies' requirement of Article III, [and] saves the statute from unconstitutionally expanding the federal courts' jurisdiction." *Deveraux v. City of Chicago*, 14 F.3d 328, 330-31 (7th Cir. 1994) (internal quotations omitted). The exercise of judicial power under Article III of the Constitution depends on the existence of a case or controversy, and "a federal court [lacks] the power to render advisory opinions." *U.S. Nat. Bank of Oregon v. Independent Ins. Agents of*

*America*, 508 U.S. 439, 446 (1993) (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)). The dispute must "admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240-41 (1937)*; MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118; 127 S.Ct. 764, 771 n.7 (2007).

An actual controversy may exist, and a claim may be ripe for adjudication, even when the voluntary actions of the plaintiff prevent the anticipated injury from actually occurring, for example if the plaintiff voluntarily complies with disputed contractual obligations. *MedImmune*, 127 S. Ct. at 773. The central question for the court in such cases is whether the consequences facing the plaintiff who refuses to comply with claimed contractual obligations could fairly be called coercive. *Id*. at 773 n.9. For example, in *MedImmune* the Supreme Court found that the threat of treble damages and the loss of 80 percent of the petitioner's business could fairly be said to have coerced the petitioner into complying with disputed contractual obligations. *Id*. at 773 n.10. Therefore, the Court found that the claim was ripe for adjudication despite the fact that the petitioner's own actions, in complying with the disputed contractual obligations, made what would otherwise be an imminent threat a nonexistent threat. *Id*. at 775.

Here, Plaintiff argues, "To prevent Mr. Bechtold from bringing a declaratory judgment claim attacking the validity of his contract would be to force him into a decision of either abiding by the fraudulent contract or breaching the purported contract and suffer [sic] an action for damages." Bechtold claims he has foregone his right to cancel his Sprint cellular telephone service because Sprint's threats of applying an early termination fee have coerced him into doing so. The question for this Court is whether the mere threat to a consumer of being assessed an

early termination fee by a cellular telephone provider can fairly be called "coercive," such that the reasonable consumer would comply with the disputed contract rather than risk incurring the wrongful fee. The Court finds that, in these particular circumstances, the mere threat of imposing an early termination fee on a consumer who disputes that a valid contract exists can fairly be called coercive. A consumer like Bechtold should not have to wait until he is billed on an invalid contract, refuse to pay the bill, face the nightmare of adverse credit reporting, and wait for actual litigation or the threat of litigation before he can bring an action to prove that the alleged contract is invalid. The Court's reasoning is purely practical. For a consumer, the threat of an overdue bill showing up on his or her credit report is a huge potential negative consequence. Many, if not most, consumers will choose to pay the early termination fee, even though it is not a valid charge, rather than chance having to spend the time and money necessary to correct or explain an overdue bill reported to credit agencies. Additionally, it is unlikely that a corporation like Sprint would bother to bring a legal action against a consumer in order to recover the relatively small amount of the early termination fee. Accordingly, this is a situation in which the plaintiff's claim is as "ripe" as it is ever going to be. Furthermore, for Bechtold at least, the claim is easily adjudicated.[2] Accordingly, the Court finds that an actual case or controversy exists and that Bechtold's declaratory judgment claim is ripe for adjudication. Therefore, the Court denies Defendant's motion to dismiss Count VI on that basis.

---

[2]The harder question will be whether class certification is appropriate for a declaratory judgment action based on the statute of frauds. However, that question is not currently before the Court and, therefore, the Court does not address it.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Second Motion to Dismiss (Doc. 72).

**IT IS SO ORDERED.**
**DATED: October 30, 2008**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**